IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MUSTAFA ABUOMAR, | : | Civil Action No. 4:14-CV-1036 |
| | : | |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA DEPARTMENT | : | |
| OF CORRECTIONS, VINCE | : | |
| MOONEY, EDWARD BAUMBACH: | | |
| and DENNIS BRUMFIELD, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM
May 4, 2015

On May 29, 2014, Plaintiff Mustafa Abuomar initiated the above-captioned

civil action by filing a complaint with this Court, alleging violations of 42 U.S.C. §

1985(2), constitutional violations of the Fourth, Fifth, Fourteenth, and Eighth

Amendments, *Monell* liability under 42 U.S.C. § 1983, violations of the

Pennsylvania Whistleblower Law at 43 P.S. § 1421, and various state law claims

including battery, intentional infliction of emotional distress, and false

imprisonment. After filing an answer, Defendants collectively filed a motion for

judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c),

requesting judgment on Counts III (Fifth Amendment violations), V (Eighth

Amendment violations), VI (*Monell* Liability), and IX (Pennsylvania

Whistleblower Law).

In his brief in opposition, Plaintiff has concurred in the dismissal of Counts

III, V, and VI; therefore those claims will be dismissed from Plaintiff's complaint

without further discussion.  The only remaining matter, that of Plaintiff's claim

under the Pennsylvania Whistleblower Law, has been fully briefed and is now ripe

for disposition.  In accordance with the following reasoning, Count IX under the

Pennsylvania Whistleblower Law is dismissed without prejudice with leave to

amend in accordance with the following reasoning.

## I. BACKGROUND

Plaintiff Mustafa Abuomar has brought this action pursuant to 42 U.S.C. §

1983, alleging various civil rights violations to which he was subjected by his

employer and several other employees.  For the period relevant to this case,

Plaintiff was employed by the Department of Corrections (hereinafter the "DOC")

as an imam, and was assigned to work at SCI Coal Township in Northumberland

County, Pennsylvania.  Pl.'s Compl., May 29, 2015, ECF No. 1 ¶ 7, 9, 10

(hereinafter "Pl.'s Compl.").  In his capacity as imam, Plaintiff was responsible for

organizing observances and other activities for inmates of Muslim faith.  *Id.* ¶ 12.

Plaintiff is of Arab ethnicity and Jordanian nationality. *Id.* ¶ 13.

2

At some time prior to the events at issue in the instant motion, Plaintiff had complained to the DOC's internal EEO, the Equal Employment Opportunity Commission (hereinafter the "EEOC"), and the Pennsylvania Human Rights Commission (hereinafter the "PHRC") regarding inappropriate ethnic, racial and religious slurs made by Corrections Officer Benza to Plaintiff. *Id.* ¶ 18.  On March 5, 2014, when Plaintiff was on duty at SCI Coal Township, he was ordered by the Superintendent of SCI Coal Township, Defendant Mooney, to write a detailed statement about his interaction with two other DOC employees, Deputy Superintendent Michael Miller and Corrections Officer Benza. *Id.* ¶ 3, 17.  Due to the pending investigation, Plaintiff refused to write a statement on the matter for Defendant Mooney.  *Id.* ¶ 19.  Following the incident, Plaintiff placed a call to the Director of the EEO, Raphael Chieki, who told him he had already explained the situation to Defendant Mooney and that Plaintiff need not write a statement. *Id.* ¶ 25, 26.  He then placed a call to his attorney. *Id.* ¶ 28.

As he was on the phone with his attorney, Defendants Baumbach and Brumfield came into his office in full uniform and ordered him to hang up the phone and come with them.  *Id.* ¶ 29, 30.  When Plaintiff protested that he was speaking with his attorney, Defendant Brumfield grabbed the phone from Plaintiff's hand and then grabbed Plaintiff by the arm and ordered him out of the room. *Id.* ¶ 31-33. In so doing, they told Plaintiff that he was under their

jurisdiction and ordered him to walk in front of them, escorting him like a prisoner through SCI Coal Township via various common rooms. *Id*. ¶ 36, 37, 41. Defendants Baumbach and Brumfield eventually brought Plaintiff into Defendant Mooney's conference room with several other DOC employees and ordered him again to write a statement. *Id*. ¶ 43-47.  Throughout this time, they would not allow him to leave the room or use the restroom, and they continued to demand that he write the statement, despite being informed by both Plaintiff and EEO Director Chieki that he was not required to do so. *Id*. ¶ 48-54, 63-64.

Ultimately, Plaintiff agreed to complete a statement, allegedly under duress. *Id*. ¶ 56.  After finishing the statement, however, he was not permitted to leave until Defendant Mooney was able to review the statement.  *Id*. ¶ 74-79.  When Defendant Mooney reviewed the statement, he related to Defendant Brumfield that he was not satisfied with the content of Plaintiff's statement. *Id*. ¶ 80. Nevertheless, Defendants allowed Plaintiff to leave, although they made clear to Plaintiff that on the following morning he would be required to rewrite his statement to Defendant Mooney's satisfaction. *Id*. ¶ 81, 82. He was once again escorted like a prisoner, this time from the facility. *Id*. ¶ 82.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not

to delay trial." Fed. R. Civ. P. 12(c).  The pleadings are considered closed after an answer is filed, in addition to a reply to any counterclaims asserted in the answer. *See Atiyeh v. National Fire Ins. Co. of* Hartford, 742 F.Supp.2d 591, 595 (E.D.Pa. 2010).  A judgment on the pleadings will be granted only if "the movant clearly establishes that there are no material issues of fact, and he is entitled to judgment as a matter of law." *Sikirica v. Nationwide Insurance Company*, 416 F.3d 214, 220 (3d Cir. 2005) (citing *Society Hill Civic Association v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980). In ruling on such a motion, the court "must view the facts presented in the pleadings and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Id.*  Where, as here, a motion for judgment on the pleadings argues that the plaintiff has failed to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(h)(2)(B), the court considers the motion under the same standard as a Rule 12(b)(6) motion, even though no motion to dismiss under Rule 12(b)(6) has been made. Fed. R. Civ. P. 12(h)(2)(B); *see e.g., Turbe v. Government of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must view all allegations stated in the complaint as true and construe all inferences in the light most favorable to plaintiff.  Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d

Cir. 1993).  However, "the tenet that a court must accept as true all of the [factual] allegations contained in the complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations omitted).   In ruling on such a motion, the court primarily considers the allegations of the pleading, but is not required to consider legal conclusions alleged in the complaint.  Kost, 1 F.3d at 183.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  At the motion to dismiss stage, the court considers whether plaintiff is entitled to offer evidence to support the allegations in the complaint.  Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000).

A complaint should only be dismissed if, accepting as true all of the allegations in the amended complaint, plaintiff has not pled enough facts to state a claim to relief that is plausible on its face.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 663-664.

 "In considering a Rule 12(b)(6) motion, we must be mindful that federal courts require notice pleading, as opposed to the heightened standard of fact pleading." Hellmann v. Kercher, No. 07-1373, 2008 WL 1969311 at * 3 (W.D. Pa. May 5, 2008) (Lancaster, J.).  Federal Rule of Civil Procedure 8 "requires only a

6

'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the…claim is and the grounds on which it rests,'" Bell Atlantic Corp. v. Twombly, 550 U.S. at 554 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, even under this lower notice pleading standard, a plaintiff must do more than recite the elements of a cause of action, and then make a blanket assertion of an entitlement to relief. See Hellmann, 2008 WL 1969311 at *3.  Instead, a plaintiff must make a factual showing of his entitlement to relief by alleging sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. See Twombly, 550 U.S. at 561. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not "shown" - - "that the pleader is entitled to relief." Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)).

The failure-to-state-a-claim standard of Rule 12(b)(6) "streamlines litigation by dispensing with needless discovery and factfinding."  Neitzke v. Williams, 490 U.S. 319, 326-27 (1989).  A court may dismiss a claim under Rule 12(b)(6) where there is a "dispositive issue of law."  Id. at 326.  If it is beyond a doubt that the non-moving party can prove no set of facts in support of its allegations, then a claim must be dismissed "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."  Id. at 327.

## III. DISCUSSION

Section 1423 of the Pennsylvania Whistleblower Law provides, in relevant

part:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

43 P.S. § 1423(a).  Section 1422 of that law defines the following terms:

> "Wrongdoing" is a "violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer."

> A "good faith report" is a "report of conduct defined in this act as wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true."

43 P.S. § 1422.

Defendants object to Plaintiff's claim under the Pennsylvania Whistleblower

Law on three bases: (1) that a report of violations of the PHRA and other

employment discrimination laws does not constitute "wrongdoing" as it is defined

within the statute; (2) that Plaintiff's report does not constitute a "good faith

report" based on the above definition because it was made in consideration of

personal benefit; and (3) that the actions taken against Plaintiff, as stated in the

8

complaint, did not sufficiently alter his compensation, terms, conditions, location or privileges of employment as is required under the statute.

A. Wrongdoing

Defendants first argue that discrimination in violation of Title VII and the PHRA does not constitute "wrongdoing" within the meaning of the statute because neither are of the type that the Department of Corrections is charged with enforcing.  To that end they argue, "Certainly it is within [the DOC's] desire to ensure that their employees are not subject to workplace discrimination, but it is not a statute or regulation that the DOC is charged with enforcing."  Plaintiff responds that "[c]ontrary to Defendants' assertions, the Department of Corrections is charged with adherence to both acts for the public good."

As articulated above, in order to state a claim under the Pennsylvania Whistleblower Law, the plaintiff must demonstrate that he made a report of wrongdoing, which is defined specifically to include only violations of laws or regulations designed to protect the interest of the public.  In one of the leading Pennsylvania cases on the subject, the court held that the phrase "protect the interest of the public" means "that a statute or regulation is of the type that the employer is charged to enforce for the good of the public or is one dealing with the internal administration of the governmental employer in question." *Gray v. Hafer*, 651 A.2d 221, 224 (Pa.Cmwlth. 1994).  A later case, *Golaschevsky v.*

*Commonwealth, Department of Environment Protection*, reaffirmed *Gray*, reasoning further that "[t]he fact that the wrongdoing was not committed by employees of the [employer] was not the critical factor for purposes of [the *Gray*] decision, i.e., the identity of the party committing the wrongdoing was not determinative. The determinative factor was that the violation was not of a statute or regulation that the [employer] was charged to enforce for the good of the public." *Golaschevsky v. Com., Dept. of Environmental Resources*, 683 A.2d 1299, 1304 (Pa.Cmwlth. 1996).

Consequently, the important issue in the matter before this Court is whether anti-discrimination laws such as those presented through Title VII and the PHRA are "of the type that the employer is charged to enforce for the good of the public." This analysis entails consideration of two elements: (1) whether Title VII and the PHRA are statutes that the DOC is charged with enforcing; and (2) whether that enforcement is for the good of the public. I find that they are, and that therefore Plaintiff has adequately pled the element of "wrongdoing."

In *Gray*, an employee of the Auditor General's office reported instances of criminal misconduct by Temple University employees, which he alleged ultimately led to his dismissal. *Gray*, 652 A.2d at 224. The court in that case found that the reported instances of misconduct were not violations of any law or regulation which the Auditor General's office had the responsibility to enforce and therefore

10

there was no "wrongdoing" within the meaning of the whistleblower law. *Id.* at

225. In so holding, the court analogized to a situation in which Temple University

officials received parking tickets. Because parking tickets are not laws of the type

enforced by the Auditor General and would have nothing to do with the internal

administration of that office, such violations could not be considered

"wrongdoing." *Id.* at 224.

In contrast, the court in *Rankin v. City of Philadelphia* found that violations

of health and safety regulations were "wrongdoing" within the meaning of the law.

*Rankin v. City of Philadelphia*, 963 F.Supp. 463, 473 (E.D.Pa. 1997). In that case,

the court was asked to consider a situation in which a nursing home employee

reported allegations of falsified asbestos records. *Id.* at 467. The court specifically

addressed the decision in *Gray* and differentiated it, holding that the *Gray* court

"was addressing . . . the question [of] whether wrongdoing is established by

reporting violations not only of crimes of the employer but of third parties. . . .

Here, of course, Rankin is alleging that the violations were committed by his

employer, a matter his employer certainly does have something to do with, and

they are violations of regulations generally designed to protect the interest of the

public." *Id.* at 473 n.3.

This Court finds little difference with regards to the impetus on the employer to enforce anti-discrimination laws and health/safety regulations.  An employer is only charged with enforcing health and safety regulations to the extent that it is required to comply with those regulations and therefore ensure compliance amongst its employees.  In the same way, an employer is charged with enforcing anti-discrimination laws to the extent that it is required to comply with those laws and consequently ensure compliance amongst its employees.   The latter is not the type of situation in which the employer could do nothing to prevent the violation from occurring; rather, the employer is uniquely situated to prevent discrimination within its workplace through the way it runs its office and directs its employees. Consequently, this Court holds that the DOC is charged with enforcing anti-discrimination laws such as Title VII and the PHRA.[1]

The second inquiry in this analysis, then, is whether the DOC enforces Title VII and the PHRA "for the good of the public."  As to this aspect, the Court has little guidance from case law and must instead rely upon its own common sense and the purposes and policies behind the statutes themselves.  Importantly, section 952 of the PHRA, "Findings and declaration of policy," states:

> [D]iscrimination foments domestic strife and unrest, threatens the rights and privileges of the inhabitants of the Commonwealth, and undermines the foundations of a free democratic state.  The denial of equal employment,

---

[1] My holding on this issue is consistent with other case law on the subject.  See *Tresky v. Peters*, Civil Action No. 09-1616, 2010 WL 1979391, at * 5 (W.D.Pa. Apr. 27, 2010) (holding that a report of retaliation because of the filing of an EEOC charge constitutes good-faith reporting of wrongdoing under the Pennsylvania Whistleblower Law).

> housing and public accommodation opportunities because of such
> discrimination, and the consequent failure to utilize the productive capacities
> of individuals to their fullest extent, deprives large segments of the
> population of the Commonwealth of the earnings necessary to maintain
> decent standards of living, necessitates their resort to public relief and
> intensifies group conflicts, thereby resulting in grave injury to the public
> health and welfare, compels many individuals to live in dwellings which are
> substandard, unhealthful and overcrowded, resulting in racial segregation in
> public schools and other community facilities, juvenile delinquency and
> other evils, thereby threatening the peace, health, safety and general welfare
> of the Commonwealth and its inhabitants.

43 P.S. § 952(a).

Such a broad and sweeping statement of policy leads this Court to believe that the relief provided for in the statute was enacted to achieve more wide-reaching aims than remedying individualized discrimination. Even though the situation before the Court today is confined to employees of the DOC, the purpose behind the act indicates the necessity that each individual employer abide by the anti-discrimination laws contained therein in order to achieve more comprehensive purposes. Moreover, though Title VII of the Civil Rights Act of 1964 contains no such analogous statement of policy, this Court has no reason to believe that its objectives are much different or more limited than those of the PHRA. Accordingly, I find that the DOC is tasked with enforcing these anti-discrimination laws "for the good of the public," and that therefore the violation of those laws constitutes wrongdoing within the meaning of the Pennsylvania Whistleblower Law.

B. <u>Good Faith Report</u>

Defendants next contend that Plaintiff's report, which was a discrimination claim against a corrections officer, cannot be considered a good faith report because it was not made without consideration of personal benefit, as is required by the statute.  Plaintiff merely responds that "[n]o portion of the Complaint indicates that Plaintiff made his reports with malice or in consideration of personal gain.  Those are defenses which Defendants may raise only after development of a record."  Neither party cites to any law in support of their respective positions.

Nevertheless, this Court agrees with Plaintiff that, on the instant motion, a conclusive determination as to whether Plaintiff made his report of wrongdoing with malice or consideration of personal benefit would be premature.  The exact circumstances and contours of Plaintiff's reports to the EEOC and the PHRC are unknown at this time, as are the Plaintiff's motivations behind so reporting.  Drawing all inferences in favor of the Plaintiff, the nonmoving party, it is entirely plausible that the Plaintiff made his report with motivations other than that of personal benefit; therefore it is impossible for this Court to determine that no genuine issue of material fact exists as to this element of Plaintiff's claim.[2]

---

[2] However, this Court will note that in a similar situation a court determined on a motion for summary judgment that the plaintiff's complaints regarding discrimination against herself did not constitute a good faith report because they were made for her own personal benefit.  *See Albright v. City of Philadelphia*, 399 F.Supp.2d 575, 596 (E.D.Pa. 2005).  Importantly, the court stated, "If Albright's complaints constituted a good faith report for the purposes of the Whistleblower Act, every retaliation claim under Title VII or PHR involving a public employer would trigger the application of the act, clearly not within the plain statutory language excluding 'consideration of personal benefit' from protection under the statute." *Id.*

14

C. Retaliation

Finally, Defendants argue that the adverse actions that Plaintiff was subjected to, as described above, are not sufficient to make out a claim that he was discharged, threatened, or otherwise discriminated or retaliated against "regarding [his] compensation, terms, conditions, location or privileges of employment." They contend that what is alleged is insufficient because it did not alter the conditions of Plaintiff's employment.  Plaintiff responds that the Pennsylvania Superior Court in *Podgurski v. Pennsylvania State University* has found similar allegations to sufficiently state a claim of retaliation under the Pennsylvania Whistleblower Law.

To begin with, Plaintiff's reliance on *Podgurski* is clearly misplaced.   The court in that case decided only the issue of whether the violations that the plaintiff had reported could constitute wrongdoing, not whether the retaliatory acts taken were sufficient in that they somehow altered the conditions of plaintiff's employment. *Podgurski v. Pennsylvania State University*, 722 A.2d 730, 732 (Pa.Super. 1998).  That court did not have before it, and therefore did not consider, whether the allegations of retaliation in the complaint, which were somewhat similar to those in the case at bar, were sufficient to state a claim under the Pennsylvania Whistleblower Law.  Though it alludes to a situation from another case in which the court had decided that further factual details would be helpful in

15

coming to a legal conclusion on this issue, it did not conclusively rule that the retaliatory actions in the specific action before it were sufficient.[3]

This Court is again faced with a situation in which there is little law to inform it as to what types of adverse actions were contemplated by the specific addition of the phrase "compensation, terms, conditions, location or privileges of employment." However, it is relevant to note that the substantive provisions of Title VII and the PHRA utilize almost this exact same language.[4] Consequently, in order to determine what the Pennsylvania legislature intended when it enacted section 1423, I will look to the way in which the phrase has been interpreted under Title VII.[5]

In this regard, the United States Supreme Court has held that the "words in the substantive provision [of Title VII] – 'hire,' 'discharge,' 'compensation, terms, conditions, or privileges of employment,' . . . explicitly limit the scope of that provision to actions that affect employment or alter the conditions of the workplace." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62

---

[3] The case that is discussed by the *Podgurski* court is *Rodgers v. Pennsylvania Dept. of Corrections*, 659 A.2d 63 (Pa.Cmwlth. 1995). In that case, the plaintiff was placed on the daylight shift, contrary to his wishes, and was refused a transfer to a different location. Ultimately, he was relieved of his leadership position and several job duties. These allegations are very different from those in the case before us today, and because the holding in that case was very dependent on the factual background, it is not helpful in deciding the present issue.

[4] Section 703(a)(1) of Title VII states, "It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin."

[5] The elements of a discrimination claim under the PHRA are analogous to those under Title VII. *See Goosby v. Johnson & Johnson Medical, Inc.*, 228 F.3d 313, 317 n.3 (3d Cir. 2000) ("The analysis required for adjudicating Goosby's claim under PHRA is identical to a Title VII inquiry.").

(2006).  This was decided in direct contrast to the anti-retaliation provision of that statute, which contains no such language and therefore "is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* at 64.  Accordingly, while the anti-retaliation provision applies to all adverse action that might "dissuade[] a reasonable worker from making or supporting a charge of discrimination," *id.* at 68., the substantive provision which contains the implicated language is much more limited, addressing only those actions which affect employment or alter the conditions of the workplace.  Importantly, under the statute, "not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).

In the case at bar, Plaintiff has alleged a variety of retaliatory actions taken against him on one specific day.  These allegations, while certainly adverse, do not fall within the plain language of the phrase "compensation, terms, conditions, location or privileges of employment," as it has been interpreted by the United States Supreme Court in the context of Title VII. Consequently, the facts as pleaded are insufficient to state a claim for relief under the Pennsylvania Whistleblower Law.  The Court notes, however, that Plaintiff has mentioned in his opposition brief that "in the course of discovery [he] will show that he was stripped of certain duties of his position and, ultimately, constructively discharged."

Because these allegations are not included within the complaint, this Court has not considered them for the purposes of the instant motion.  However, I will dismiss this count without prejudice and grant Plaintiff leave to amend to assert those additional allegations in his complaint.

## IV. CONCLUSION

In accordance with the foregoing reasoning, Counts III, V, and VI will be dismissed on concurrence of the Plaintiff.  Count IX under the Pennsylvania Whistleblower Law is dismissed without prejudice with leave to amend in accordance with the instant decision.

BY THE COURT:


/s Matthew W. Brann
Matthew W. Brann
United States District Judge