**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MUSTAFA ABUOMAR, | : | No.: 4:14-CV-01036 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA DEPARTMENT OF | : | |
| CORRECTIONS, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### JULY 12, 2017

## I.    BACKGROUND

Mustafa Abuomar worked as the prison Imam at State Correctional Institution Coal Township (SCI Coal Township) in Northumberland County, Pennsylvania for nearly twenty years before retiring in May of 2014.[1] In his work as the prison Imam, Mr. Abuomar organized religious observances for the Muslim inmates.

During his tenure at SCI Coal Township, Mr. Abuomar filed a complaint with the Equal Employment Opportunity Commission (EEOC) about another prison employee, Theodore Benza, who Mr. Abuomar claimed was making inappropriate

---

[1]    Deposition of Mustafa Abuomar, ECF No. 31-1, at 10:2-6.

ethnic, racial, and religious comments toward him. Mr. Abuomar's complaint was filed with the EEOC in January of 2014.[2]

On March 5, 2014, Mr. Abuomar was asked by SCI Coal Township's Superintendent, Vincent Mooney, to discuss his complaints about his work environment.[3] Superintendent Mooney asked two Correctional Officers to escort Mr. Abuomar to the prison's training room so that they might informally resolve any workplace issues that existed.[4] After Superintended Mooney attempted to acquire more information about the allegations Mr. Abuomar had made, Mr. Abuomar left work early for a pre-scheduled medical appointment.[5]

Following this interaction, Mr. Abuomar filed this action, in which he advances various civil rights and tort claims. In accordance with the following reasoning, the Defendants' Motion for Summary Judgment is granted.

## II.   LAW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."[6] Summary judgment is appropriate where "the movant shows that there is no genuine dispute

---

[2]   EEOC Complaint, ECF No. 39-1.

[3]   Deposition of Vincent Mooney, ECF No. 31-3, at 17:01–06.

[4]   *Id.*

[5]   Deposition of Mustafa Abuomar, ECF No. 31-2. at 48–49.

[6]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

as to any material fact and the movant is entitled to judgment as a matter of law."[7] "Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[8]

"A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[9] "A plaintiff, on the other hand, must point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[10]

"[T]he inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[11] Thus, "[i]f the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence

---

[7] Fed. R. Civ. P. 56(a).

[8] *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (Hutchinson, J.) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and *Celotex Corp.*, 477 U.S. at 322).

[9] *Clark*, 9 F.3d at 326.

[10] *Id.*

[11] *Liberty Lobby, Inc.*, 477 U.S. at 252.

presented."[12] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[13] "The judge's inquiry, therefore, unavoidably asks . . . 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'"[14] Summary judgment therefore is "where the rubber meets the road" for a plaintiff, as the evidentiary record at trial, by rule, will typically never surpass that which was compiled during the course of discovery.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[15] "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates

---

[12]   *Id.*

[13]   *Id.*

[14]   *Id.* (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)).

[15]   *Celotex Corp.*, 477 U.S. at 323 (internal quotations omitted).

that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[16]

Where the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[17] For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (i) "citing to particular parts of materials in the record" that go beyond "mere allegations"; (ii) "showing that the materials cited do not establish the absence or presence of a genuine dispute"; or (iii) "showing . . . that an adverse party cannot produce admissible evidence to support the fact."[18]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[19] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact

---

[16]  *Id.*

[17]  *Liberty Lobby, Inc.*, 477 U.S. at 250.

[18]  Fed. R. Civ. P. 56(c)(1).

[19]  *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003) (Weis, J.).

undisputed for purposes of the motion."[20] On motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record."[21]

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[22] "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[23] "If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted."[24]

## III. ANALYSIS

Defendants' motion for summary judgment is granted as to each of Plaintiff's claims.

### A. Summary Judgment Is Granted As To Count I—Plaintiff's Civil Conspiracy Claim under 42 U.S.C. § 1985(2).

Title 42, United States Code, Section 1985(2) addresses two forms of prohibited conspiracy. The first applies to conspiracies relating to federal judicial

---

[20] Fed. R. Civ. P. 56(e)(2).

[21] Fed. R. Civ. P. 56(c)(3).

[22] *Liberty Lobby, Inc.*, 477 U.S. at 249.

[23] *Id.*

[24] *Id.* at 249–50 (internal citations omitted).

proceedings,[25] while the latter applies to "conspiracies to obstruct the course of justice in state courts."[26]

In particular, the text of § 1985(2) provides as follows:

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

Thus, when a plaintiff advances a claim pursuant to 42 U.S.C. § 1985(2), he must point to a federal or state proceeding with which the defendants have interfered. In the case of a state proceeding, he must allege that such interference was done to "deny to any citizen the equal protection of the laws." Otherwise, a claim under § 1985(2) must fail. Additionally, the Supreme Court of the United States has interpreted the second portion of § 1985(2) to require that the conspirators' actions in furtherance of their objective have some "racial, or perhaps

---

[25] *Kush v. Rutledge*, 460 U.S. 719, 724 (1983).

[26] *Id.* at 725.

otherwise class-based, invidiously discriminatory animus"[27] and be "motivated by an intent to deprive their victims of the equal protection of the laws."[28]

The Plaintiff's claim fails both the federal and state prongs of § 1985(2). Plaintiff has not adduced sufficient evidence to create a genuine dispute of material fact as to the existence of any federal or state proceeding, much less that the Defendants interfered with one. In fact, Plaintiff asserts that such a proceeding is not necessary to satisfy his claim.[29] The Plaintiff's interpretation of § 1985(2) ignores clear judicial precedent in this district establishing the need for a federal or state proceeding in order to make out a claim under that section.

In *Holmes v. Benedict*, for example, United States Magistrate Judge Martin C. Carlson recommended that a matter be dismissed for failure to identify "any pending state or federal court proceeding which was the subject of unlawful interference."[30] In that case, as here, the only proceedings the employee could point to were her own "internal institutional complaints, and some form of administrative disciplinary matter involving her employer."[31] Those facts are

---

[27]  *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

[28]  *Kush*, 460 U.S. at 725.

[29]  Pl.'s Br. In Opp'n to Def.'s Mot. for Summ. J. at 2.

[30]  *Holmes v. Benedict*, No. 1:12-CV-767, 2012 WL 6561559, at *6 (M.D. Pa. Nov. 27, 2012) (dismissing a claim that did not identify any pending federal or state proceeding, but rather only internal proceedings being conducted by the employer).

[31]  *Id.*

similar to the ones at issue in this action, where the Plaintiff cannot point to any pending federal or state proceeding.

Magistrate Judge Carlson's reasoning was further accepted by Judges Sylvia H. Rambo and A. Richard Caputo of this Court. In *Behne v. Halstead*, Judge Rambo held that plaintiffs claiming that their positions were terminated to prevent their investigations into the defendants could not survive a motion for summary judgment because they could not point to any federal or state proceeding that was subject to interference.[32] Similarly, in *Florimonte v. Borough of Dalton*, Judge Caputo dismissed an action from a plaintiff claiming a violation of her civil rights by defamation when she demanded that the defendant remove pipes that flooded her property.[33] Once again, because the plaintiff was not able to point to a federal or state proceeding that the defendant interfered with, her claim under § 1985(2) could not survive.[34]

Despite Plaintiff's insistence to the contrary,[35] a federal or state proceeding must be identified in order to sustain a claim under § 1985(2). This is made clear by the Supreme Court's reasoning in *Kush*, where it explained that "the second part of § 1985(2) applies to conspiracies to obstruct the course of justice in state

---

[32] *Behne v. Halstead*, No. 1:13–CV–0056, 2014 WL 1689950, at *15 (M.D. Pa. Apr. 29,2014).

[33] *Florimonte v. Borough of Dalton*, No. 3:CV-14-0341, 2014 WL 3114071, at *10 (M.D. Pa. July 7, 2014).

[34] *Id.* at *22.

[35] Pl.'s Br. in Opp'n to Def.'s Mot. For Summ. J. 2.

courts."[36] Without a state or federal court proceeding to point to, the Plaintiff cannot satisfy this requirement.

The EEOC proceeding that was in progress does not satisfy this requirement, because the EEOC is an administrative agency and therefore not a part of the federal judicial system.[37] As the United States Court of Appeals for the Fifth Circuit has noted, "interference or obstruction of administrative proceedings is not redressable under § 1985(2)."[38] Because the uncontroverted record reveals that there was no federal or state proceeding that the Defendants conspired to interfere with, the Plaintiff cannot sustain a claim under 42 U.S.C. § 1985(2), and the Defendants are entitled to summary judgment on Count I.

Furthermore, the Plaintiff fails to satisfy the requirement of an invidiously discriminatory animus motivated by an intent to deprive Plaintiff of the equal protection of the laws. "The protection afforded by section 1985 is "narrower" than that afforded by section 1983 because section 1985 requires the conspiracy to be motivated by a racial or other class-based animus."[39] Where discriminatory animus

---

[36]   *Kush*, 460 U.S. at 725.

[37]   *Carter v. Church*, 791 F.Supp. 298, 300 (M.D. Ga. 1992).

[38]   *Deubert v. Gulf Federal Sav. Bank*, 820 F.2d 754, 758 (5th Cir. 1987).

[39]   *Robinson v. N.Y. State Dep't of Correction Servs.*, No. 908-CV-0911, 2009 WL 3246818, at
       *18 n.29 (N.D.N.Y. Sept. 30, 2009).

is not "the motivating force" behind the actors' conduct, a 1985 claim must therefore fail.[40]

The Plaintiff does not set forth evidence that the decision to bring Mr. Abuomar to the prison training room was based on a racial or otherwise discriminatory animus, nor that it was intended to deprive the Plaintiff of any legal protection. Instead, the evidence shows that this was an employment-based decision intended to collect more information about a potential conflict between two employees.[41] Because the Plaintiff has failed to connect the action to any discriminatory animus, his claim cannot survive summary judgment.

Neither is there a genuine dispute of material fact as to the existence of a conspiratorial motive. "To sufficiently plead the conspiracy element in a § 1985(2) claim, one of the requirements is to set forth facts showing an agreement between the alleged conspirators."[42] As our Court of Appeals explained, this element requires "a meeting of the minds" to accomplish the unconstitutional purpose.[43] A district court may disregard intimations of a conspiracy that are "vague and provide no basis in fact."[44]

---

[40] *Benson v. United States*, 969 F. Supp. 1129, 1136 (N.D. Ill. 1997).

[41] Mooney Dep. 12:8-22.

[42] *White v. Wireman*, No. 1:16-CV-675, 2017 WL 2215277, at *8 (M.D. Pa. May 19, 2017) (Caldwell, J.).

[43] *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010).

[44] *Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 647 (S.D.N.Y. 2015).

Even casting the facts in the light most favorable to the Plaintiff, there he has not presented sufficient evidence as a matter of law to permit the inference that the Defendants conspired together to discriminate against him prior to their meeting. To the contrary, the facts lack any suggestion of a unity of purpose or prearranged understanding on the part of the Defendants prior to their alleged confrontation with Mr. Abuomar. Because a reasonable jury could not conclude that the subject meeting was the product of a concerted conspiracy rather than a one-off meeting, summary judgment is further warranted on this independent ground.

### B. Summary Judgment Is Granted As To Count II—Plaintiff's Fourth Amendment Seizure Claim.

Plaintiff contends that Defendants violated his Fourth Amendment right to be free from illegal searches and seizures. The Supreme Court of the United States has previously held that a person is seized "within the meaning of the Fourth Amendment only if", given the objective circumstances of the situation, "a reasonable person would have believed that he was not free to leave."[45] The Supreme Court's decision in *United States v. Mendenhall* established an objective test for determining whether or not a person is seized for the purposes of the Fourth Amendment. The Court also provided that examples of what conduct "*might* indicate a seizure," including the "threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the

---

[45] *United States v. Mendenhall*, 446 U.S. 544, at 554 (1980).

citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."[46]

A person has been seized "only when, by means of physical force or a show of authority, his freedom of movement is restrained."[47] The Supreme Court has recognized that this statement is a necessary rather than a sufficient one.[48] In other words, not every restraint of freedom of movement achieved through a show of authority constitutes a Fourth Amendment seizure.

The Plaintiff has failed to create a genuine dispute of material fact as to whether he was seized on March 5, 2014 during his transportation to the prison training room. His self-serving statements are unsupported by the evidence and comprise the only account of events that mentions physicals contact of any kind on that day. As a general proposition, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment."[49] This Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question."[50] As such, Plaintiff's Fourth Amendment claims are suspect from the outset.

---

[46]  *Id.* at 554 (emphasis added).

[47]  *Id.* at 553.

[48]  *California v. Hodari D.*, 499 U.S. 621, at 628 (1991).

[49]  *Patton v. Doran*, No. Civ. 3:CV-04-2233, 2006 WL 485236 (M.D. Pa, 2006).

[50]  *Brooks v. American Broadcasting Companies, Inc.*, 999 F.3d 167, 172 (6th Cir. 1993).

A reasonable jury could not conclude that Plaintiff was seized based upon the record presented. For example, the Chaplaincy Programming Director, Aaron Duncan, a non-defendant who considered himself close with the Plaintiff on the day in question, testified that at no point was the Plaintiff touched, let alone grabbed, by the Defendants.[51] Furthermore, Mr. Duncan's testimony provides no support for the blunt assertion that Plaintiff was treated "like an inmate" on the walk from his office to the training room.[52] Unable to point to any evidentiary support from the record, the Plaintiff has failed to adduce sufficient evidence to create a genuine issue of material fact.

Beyond this, it would be a gross dramatization of events to characterize the Plaintiff as having been detained by the Defendants in the training room. The record shows that he was asked to provide information, was not isolated from others, and was allowed to dictate his statement at will, rather than forced to write any particular one. In addition, no prison staff member was positioned "to ensure that the Plaintiff did not attempt to leave," and Mr. Abuomar was informed of why he was in the training room.[53] Lacking the sort of objective indicia that he was not

---

[51]    Deposition of Aaron Duncan, ECF 31-4, at 43:14-23.

[52]    *Id.*

[53]    *Aguilera v. Baca*, 394 F. Supp. 2d 1203, 1211 (C.D. Cal. 2005) (explaining that circumstances that give rise to the inference of a seizure include active positioning by individuals to prevent an exit by the plaintiff and not informing the plaintiff why he was in a specific location).

free to leave as the law otherwise requires, the Plaintiff has not put forth a viable seizure claim.

In fact, it is Plaintiff's own statements that show most clearly that he was not detained. The Plaintiff alleged that although Superintendent Mooney was not satisfied with the statement he had made, he was allowed to leave work *early* for a pre-scheduled appointment. It would contradict established doctrine to say that someone is detained when he is allowed to leave the place of detention of his own free will. According to the Supreme Court, one indication that a claimant's "freedom of movement" has not been unlawfully restricted is that he remains free to "otherwise terminate the encounter."[54] Based on the evidence of record, the Plaintiff has failed to create a genuine dispute of material fact as to a Fourth Amendment violation, and the Defendant's motion for summary judgment is therefore granted as to that claim.

Even accepting as true Plaintiff's version of events, they do not rise to the level of a constitutional harm. The Supreme Court has held that not "every malevolent touch by a prison guard gives rise to a federal action."[55] In *Posr v. Killackey*, the plaintiff videographer alleged that he was illegally seized when court security officers escorted him out of a courthouse.[56] The court in that case found

---

[54] *Florida v. Bostick*, 501 U.S. 429, 436 (1991).

[55] *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

[56] No. 01Civ.2320LTSGWG, 2003 WL 22962191 (S.D.N.Y. Dec. 17, 2003).

that there was no seizure during that process, especially because no personal belongings were confiscated.[57] Here, there is nothing to suggest that the Plaintiff's property had been confiscated, and he similarly was not seized during his escort to the training room. Similarly, in *Sheppard v. Beerman*, a law clerk alleged that he was seized by court officers when they escorted him out of the courthouse after he was fired.[58] The United States Court of Appeals for the Second Circuit found there was no seizure during his escort, and therefore no Fourth Amendment violation could lie. Mr. Abuomar's circumstances are similar: He was escorted to another part of the building from which he was later free to leave. Such conduct does not constitute a seizure in violation of his constitutional rights.

The Plaintiff's time spent in the training room does not rise to the level of a Fourth Amendment violation either. Any restriction on the Plaintiff's freedom of motion cannot be attributed to the Defendants, because "ordinarily, when people are at work their freedom to move about has been meaningfully restricted, not by the actions of law enforcement officials, but by the workers' voluntary obligations to their employers."[59] Simply having correctional officers in the room would not constitute a seizure in this case, just as it didn't in *I.N.S. v. Delgado.* Similar to that case, employees were asked questions, but there was "no reason to believe that

---

[57] *Id.* at *7.

[58] *Sheppard v. Beerman*, 18 F.3d 147 (2d Cir. 1994), cert. denied, 513 U.S. 816 (1994).

[59] *I.N.S. v. Delgado*, 466 U.S. 210, 218 (1984).

they would be detained if they gave truthful answers to the questions put to them or if they simply refused to answer."[60]

As in *Delgado*, Mr. Abuomar's movement was restricted "by a factor independent of police conduct."[61] He was restricted by the terms of his employment; he was scheduled to leave the premises at a specific time for his medical appointment. He was allowed to leave at that time. Nothing the prison staff did would have made a reasonable person believe that he would otherwise have to stay in the training room past that time. Instead, the record shows that the Plaintiff was in fact allowed to leave at the pre-approved time despite *not* providing adequate answers to the questions posed.

I also hold that Plaintiff's claim fails for yet another reason: even in the event that the Plaintiff could establish that his Fourth Amendment rights were violated, the Defendants are entitled to qualified immunity. Qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[62] Such qualified immunity attaches itself to officials whether the official's actions were a mistake of law, of

---

[60] *Id.*

[61] *Florida v. Bostick*, 501 U.S. 429, 436 (1991).

[62] *Harlow v. Fitzgerald*, 457 U.S. 800, at 818 (1982).

fact, or a combination of the two.[63] A primary purpose of the qualified immunity doctrine is to shield an official from personal liability when that official "reasonably believes that his or her conduct complies with the law."[64]

When examining whether or not qualified immunity is appropriate, we consider two issues. The first is whether the official's conduct violated a constitutional or federal right.[65] The second is whether the right at issue was clearly established.[66] A right has been clearly established when that right's contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."[67] The unlawfulness of the act in question must be apparent to a reasonable person in order to decide that qualified immunity would be inappropriate.[68]

Further, the Supreme Court has established that district court judges should exercise their discretion in determining which of the two *Saucier* prongs should be addressed first in light of the facts of any given case. In *Pearson*, Justice Samuel Alito explained that "while the sequence set forth [in *Saucier*] is often appropriate,

---

[63]   *Groh v. Ramirez*, 540 U.S. 551, at 567 (2004).

[64]   *Pearson v. Callahan*, 555 U.S. 223, at 244 (2009).

[65]   *Sharp v. Johnson*, 669 F.3d 144, at 159 (3d Cir. 2012) (citing *Saucier v. Katz*, 553, U.S. 194, at 201 (2001)).

[66]   *Id.*

[67]   *Anderson v. Creighton*, 483 U.S. 635, at 640 (1987).

[68]   *Id.*, citing *Malley v. Briggs*, 475 U.S. 335, at 344-5 (1986).

it should no longer be regarded as mandatory."[69] Instead, we were told that "the judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[70]

This Court has already addressed its decision as to the constitutionality and statutory validity of the Defendants' actions, and has found that those actions did not violate any constitutional or federal rights. As such, qualified immunity could be granted on that basis alone, as the Plaintiff is required to establish both prongs of the *Saucier* requirement. The Court will, however, reach a determination on the second prong for the record.

The evidence in the record does not lead to a reasonable inference that any such right was clearly established. Plaintiffs' attempts to strip away Defendants' entitlement to qualified immunity are expressed "at much too high a level of abstraction"—in clear contravention of the Third Circuit's recent decision in *Zaloga v. Borough of Moosic*.[71] In *Zaloga*, the Third Circuit made explicit that "it is not sufficient to conclude" that a generalized right against government

---

[69]   *Pearson*, 555 U.S. at 236.

[70]   *Id.*

[71]   841 F.3d 170, 175 (3d Cir. 2016) (Jordan, J.).

interference with a protected right exists.[72] Rather, the district court "must attend to context" and "consider . . . the circumstances confronting [the state actor]" at that particular moment in time.[73] This construction ensures that judicial emphasis remains zeroed in on the core question in qualified immunity cases: "whether a reasonable state actor could have believed his conduct was lawful."[74]

Here, the issue is whether a reasonable officer in the Defendants' positions would believe that a co-worker who acquiesces in a meeting discuss an employment dispute, whose personal effects are not confiscated, and who is permitted to freely leave, is unlawfully seized. The law in this arena is not so established.

There is a dearth of cases that can be readily analogized to the facts of this action. As the court in *Myers v. Baca* noted, "the vast majority of cases involving seizures of persons stem from criminal investigations."[75] Other cases involving alleged seizures tend to involve college students and college-owned dormitories.[76] In short, the facts of this case do not lend themselves clearly to comparison to established case law, which itself supports the application of qualified immunity.

---

[72] *Id.*

[73] *Id.*

[74] *Id.*

[75] *Myers v. Baca*, 325 F.Supp.2d 1095, 1114 (C.D. Cal. 2004).

[76] *Id.*

As the Third Circuit has explained, qualified immunity will attach absent "a robust consensus of cases" suggesting otherwise.[77]

*Myers* itself, however, presents perhaps the closest comparison and leads to the conclusion that a reasonable officer could have believed that the Plaintiff remained in the meeting to lawfully discuss an employment dispute. In *Myers*, the court recited a number of factors supporting that conclusion.[78] For instance,, the plaintiffs "were not subject to physical force,"[79] nor threatened with force. In addition, they were not "informed that a criminal investigation was taking place."[80] Finally, the plaintiffs in that case were not arrested.[81]

Every one of those factors applies with equal strength to the Plaintiff in this action. The record does not support the claim that Mr. Abuomar was subject to physical force. Likewise, there was no criminal investigation in this case, nor was the Plaintiff ever arrested. These signs all strongly suggest that a reasonable officer in the Defendants' position could have believed he was not violating the Plaintiff's rights.

With that in mind, I also note that Majors Baumbach and Brumfield acted pursuant orders from their superior that they had no reason to believe would violate

---

[77] *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 639 (3d Cir. 2015) (Vanaskie, J.).

[78] *Myers*, 325 F.Supp.2d at 1114.

[79] *Id.*

[80] *Id.*

[81] *Id.*

Plaintiff's Fourth Amendment rights. As they believed themselves to be executing a simple order of escorting someone through the prison, the evidence does not support the idea that those Defendants would have understood that requiring a statement from the Plaintiff would have violated his rights. As such, the Defendants cannot be said to have violated the second prong of the *Saucier* requirement.

As applied to Superintendent Mooney, the same rationale holds. The Plaintiff's argument—that this Defendant ignored the Equal Employment Opportunity Commission's (EEOC) suggestion to not speak to the Plaintiff—is not relevant to this claim. Moreover, whether Superintendent Mooney made the best procedural decision has no bearing on the alleged constitutional violation. The EEOC's suggestion does not show that he was aware that he might be violating the Plaintiff's *constitutional* rights. Instead, the record indicates that Superintendent Mooney acted that day with the purpose of acquiring more information as to the Plaintiff's 2014 complaint to the EEOC.[82] The record does not indicate or even suggest, however, that a reasonable official would have understood that bringing an employee to his office and asking for information would have violated any constitutional or federal right. Qualified immunity is intended to protect "all but

---

[82]   Mooney Dep. 12:8-22

the plainly incompetent or those who knowingly violate the law."[83] As such, with respect to those Defendants, qualified immunity is appropriate.

Because qualified immunity would attach even if Defendants violated a substantive federal right, summary judgment is granted on this count.

### C. Summary Judgment Is Granted As To Count III—Plaintiff's Fourteenth Amendment Due Process Claim.

The Fourteenth Amendment to the United States Constitution provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law."[84] To establish a viable Fourteenth Amendment claim, a plaintiff must demonstrate that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the complainant of rights secured under the Constitution or federal law.[85]

The Plaintiff argues that he was detained by the Defendants, depriving him of his liberty without due process of law.[86] The Plaintiff similarly asserted that he was detained in violation of his Fourth Amendment rights. That claim was properly asserted there, and as such, under the "more-specific-provision" rule, cannot be brought again under the umbrella of the Fourteenth Amendment. Under that rule,

---

[83] *Malley v. Briggs*, 475 U.S. 335 (1986).

[84] U.S. Const. amend. XIV § 1.

[85] *Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 590 (3d Cir. 1998).

[86] Am. Compl. ¶ 98. Plaintiff also admits in his papers that he "concurs that the named individual Defendants are entitled to summary judgment with respect to their official, though not individual, capacities." ECF No. 35 at 6.

"if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."[87] This rule stems from the Supreme Court's reluctance "to expand the concept of substantive due process."[88] Because the issues that comprise the basis for this claim were precisely those resolved under the Fourth Amendment claim, the substantive due process claim must also fail.

Similarly, without the deprivation of "a protected interest in life, liberty, or property" and that deprivation having "occurred without due process of law,"[89] Plaintiff cannot establish any procedural due process violation. Plaintiff has adduced no evidence tending to show that he was deprived of any liberty or property interest in a procedurally unfair way, the procedural due process claim must also fail.

As such, summary judgment on the due process claim is granted in favor of the Defendants.

---

[87]   *Betts v. New Castle Youth Development Center*, 621 F.3d 249 (3d Cir. 2010).

[88]   *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998).

[89]   *Burns v. PA Dep't of Correction*, 544 F.3d 279, 285 (3d Cir. 2008) (explaining the two-prong requirement to prove procedural due process).

**D. Summary Judgment Is Granted As To Count IV—Plaintiff's Title VII Hostile Work Environment Claim.**

All parties concur that the named individual Defendants are entitled to summary judgment with respect to Counts IV and V of the complaint because Title VII bars recovery against individual defendants.[90] As such, summary judgment is granted on these counts in favor of the individual Defendants.

Turning to Mr. Abuomar's employer, Title VII's prohibition on hostile work environment is violated when the workplace "is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"[91] The Court examines the totality of the circumstances, considering the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[92]

The Supreme Court has further made clear that isolated incidents and offhand comments generally will not be sufficient to establish a hostile work environment.[93] "Conduct that is not severe or pervasive enough to create an

---

[90] *Sheridan v. E.I DuPont de Nemours and Co.*, 100 F.3d 1061, at 1077-8 (3d Cir. 1996).

[91] *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (citing *Harris v. Forklift Systems, Inc.* 510 U.S. 17 (1993)).

[92] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

[93] *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998).

objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview."[94]

Such a Title VII claim is analyzed under the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*. Under that framework, the plaintiff begins with the burden to establish a prima facie case of discrimination as required by the specific claim.[95] Should the plaintiff meet his burden, the defendant then is faced with a burden of production to provide a legitimate, nondiscriminatory reason for the action or decision taken.[96] If the defendant is able to do so, the burden shifts back to the plaintiff, who must prove by a preponderance of the evidence that the employer's proffered reason was merely pretextual.[97]

Mr. Abuomar alleges that the Defendants took discriminatory actions that created a hostile work environment. He claims that he had racial and religious slurs and remarks spoken at him, and that on two occasions he was treated with disrespect. While any use of such slurs ought not to be condoned, "it is . . . well settled that occasional or sporadic instances of the use of racial or ethnic slurs," are

---

[94]  *Id.* at 21.

[95]  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[96]  *Id.*

[97]  *Id.*

insufficient to prove a violation of Title VII.[98] Without specific support from the record of a greater number of incidents of racial or religious remarks or isolated incidents with much greater severity, the plaintiff cannot support a Title VII claim with these stray comments.

Furthermore, the Plaintiff alleges that one of the Defendants once threw his jacket on a table. On a separate occasion, that same Defendant made the Plaintiff pass through the standard security protocol rather than using a wand mechanism to screen him. Neither of these incidents bears any indication of racial or religious motivation; at worst, these interactions might be described as unpleasant conduct amounting to minor inconveniences. At most, the plaintiff was upset that his jacket was tossed and that he stood in line for the same security routine as everyone else. Such trivial occurrences do not amount to a Title VII violation.[99]

It is not clear from the record that the incidents alleged were motivated by ethnic, racial, or religious discrimination. The Plaintiff instead asks the Court to rely on his self-serving speculation in order to permit his complaint to survive

---

[98] *Williams v. Astra USA, Inc.*, 68 F.Supp.2d 29, 36 (D. Mass. 1999) (holding that five incidents of racially-based remarks were insufficient to support hostile work environment claim) *See also Nazaire v. Trans World Airlines, Inc.*, 807 F.2d 1372, 1380 (7th Cir.1986).

[99] *See Mitchell v. City of Dumas, Ark.*, 187 Fed.Appx. 666, 668 (8th Cir. 2006) (holding that isolated actions and comments without connection to race was at most "unpleasant or rude"); *Moss v. Texarkana Arkansas School District*, 2017 WL 810290, March 1, 2017 (W.D. Ark.) (holding that changes in working conditions that merely inconvenience an employee do not establish a Title VII violation).

summary judgment. Even accepting the Plaintiff's allegations as true, however, these incidents are simply not so "severe or pervasive" as a matter of law. [100]

Plaintiff's deposition refers to only a handful of discrete incidents between the Plaintiff and the various Defendants. [101] These isolated incidents generally recounted above do not constitute a hostile workplace severe enough to alter the terms of the Plaintiff's employment. As the Third Circuit warned, "occasional insults, teasing, or episodic instances of ridicule are not enough; they do not 'permeate' the workplace." [102] Similarly, none of the alleged incidents can be considered "extremely serious" on their own, as required. [103]

The Plaintiff is simply not able to adduce sufficient evidence to corroborate his claims of a hostile work environment in order to survive summary judgment. The record does not indicate that any events that may have occurred were pervasive or severe enough to warrant denying the motion for summary judgment. As such, the motion is granted as to Count IV.

---

[100] *See Clay v United Parcel Serv.*, 501 F.3d 695, 707–08 (6th Cir. 2007) (holding that 15 incidents over a two-year time frame did not constitute severe or pervasive conduct).

[101] Abuomar Dep. at 12:23–13:12, 62:22–63:04, 72:14–73:2.

[102] *Faragher*, 524 U.S. at 788.

[103] *Clark County School Dist. V. Breeden*, 532 U.S. 268, 271 (2001) (reminding courts that isolated incidents must be "extremely serious" to violate Title VII).

### E. Summary Judgment Is Granted As To Count V—Plaintiff's Title VII Retaliation Claim.

Title VII's anti-retaliation protections seek to safeguard those who "participate in certain Title VII proceedings (the 'participation clause') and those who oppose discrimination made unlawful by Title VII (the 'opposition clause')."[104] Claims under the anti-retaliation provision of Title VII are judged under a different lens than Title VII hostile work environment allegations; the anti-retaliation provision seeks to protect an employee from the possibility that an employer will interfere with the employee's "efforts to secure or advance enforcement of the Act's basic guarantees."[105] Put another way, the anti-discrimination provision "seeks to prevent injury to individuals based on who they are, *i.e.*, their status. The anti-retaliation provision seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct."[106]

To prove a prima facie case of retaliation, a plaintiff must show that there was "(1) protected activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse

---

[104] *Moore v. City of Philadelphia*, 461 F.3d 331, at 341 (3d Cir. 2006).

[105] *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, at 63 (2006).

[106] *Id.*

action."[107] Establishing a causal connection between the two requires the plaintiff to prove that "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."[108] As a matter of law, "Title VII retaliation claims must be proved according to traditional principles of but-for causation."[109] As such, a plaintiff must prove that the "unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."[110]

Neither party contests that the Plaintiff's filing of a complaint with the EEOC satisfies the first prong of the claim. Next, however, the Plaintiff must show that the Defendant committed an adverse employment action against him, as defined by the *Burlington Northern* standard. The Plaintiff alleges that he was retaliated against by being subjected to false imprisonment and allegedly coerced into writing a statement contradicting his complaint. He further alleges that he suffered retaliation by being subjected to acts that were offensive to someone of Islamic faith, as well as by having had his authority as the prison Imam restricted.[111]

---

[107] *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015) (internal quotations omitted).

[108] *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

[109] *University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517, 2533 (2013).

[110] *Id.*

[111] Am. Compl., ¶¶ 120–122.

In evaluating the Plaintiff's claims of retaliation, we must examine the alleged incidents and determine whether they rise to the level of being materially adverse, meaning that they "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Title VII does not establish "a general civility code for the American workplace."[112] Because the anti-retaliation statute attempts to stop employers from interfering with the exercise and vindication of a plaintiff's rights under the anti-discrimination provision of Title VII, it is only concerned with employer actions that would prevent a reasonable worker from accessing those rights. "Trivial harms" and "petty slights," are not prohibited by the provision because they will not deter a reasonable worker from utilizing the Title VII mechanisms available to him or her.[113] The Third Circuit adopted this approach soon after the Supreme Court's decision in *Burlington Northern*. Similar to the analysis involved in determining whether a workplace is hostile, the court must consider the totality of the circumstances when evaluating alleged retaliation.[114]

In the instant case, the Plaintiff has not put forth sufficient evidence beyond his own statements to create a genuine dispute of material fact. As such, the Plaintiff's evidence is insufficient to make out a *prima facie* case of retaliation. In

---

[112] *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, at 80 (1998).

[113] *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, at 68 (2006).

[114] *Moore v. City of Philadelphia*, 461 F.3d 331, at 345-6 (3d Cir. 2006).

particular, none of the Plaintiff's complained-of actions amount to materially adverse employment actions. Bringing the Plaintiff to the prison training room to discuss his allegations against another employee is not an adverse action. "[W]rite-ups and meetings with supervisors are not materially adverse employment actions."[115] Neither are "reprimands for insubordination," "meetings with supervisors," and other similar "directions."[116]

Further, Plaintiff's claim that his authority to select religious texts and organizing services also does not amount to a materially adverse action on the part of the Defendants. Having, on one occasion, not been able to select texts and organize services does not rise to the level of materially adverse action. Unlike the scenario presented in *Burlington Northern*, the Plaintiff was not reassigned to any sort of less desirable position, nor was his pay held up.[117]

Additionally, the Plaintiff claims that DOC employees placed condoms on his desks or moved his Quran to the floor. Once again, this sort of behavior—though troubling in my view, if true— does not amount to materially adverse under the *Burlington Northern* standard. The Court in *Kavanaugh v Miami-Dade County* found that a similar incident involving condoms placed around a plaintiff's work

---

[115] *Griggs v. Univ. Health Sys.*, No. CIV. SA-06-CV-384, 2008 WL 3981814, at *8 (W.D. Tex. Aug. 25, 2008).

[116] *Prince-Garrison v. Maryland Dep't of Health & Mental Hygiene*, 317 F. App'x 351, 353 (4th Cir. 2009).

[117] *Burlington Northern*, 548 U.S. at 55 (2006).

trailer did not rise to the level of being materially adverse.[118] Furthermore, even if these events did occur, Mr. Abuomar baldly asserts *ipse dixit* that the Defendants were the perpetrators of this act, with no support for the accusation.[119] Similarly, in *Kavanaugh*, the plaintiff was not able to provide evidence that her coworkers were responsible for the incident, nor that a "break-in of her car was related to the filing of her EEOC charge."[120] Mr. Abuomar finds himself in a strikingly similar position, without evidence to support the notion that his coworkers performed these acts. Given the lack of substantial evidence creating a genuine material fact, the Plaintiff cannot satisfy the second element of his claim.

Furthermore, Plaintiff cannot satisfy the causation element of his claim under the *Nassar* standard. Mr. Abuomar has not provided enough evidence to prove that his EEOC complaint was the but-for cause of any retaliatory acts. Instead, the record suggests other possible reasons for actions taken. The record suggests that Mr. Abuomar was brought to the training room in an effort to resolve a workplace dispute—not to sanction him for bringing a complaint in the first place.[121] In fact, it appears likely that the meeting would have occurred even absent the filing of a formal complaint. Further, the record reveals that the decision to select and order

---

[118] *Kavanaugh v. Miami-Dade County*, 775 F.Supp.2d 1361, 1369-70 (S.D. Fl. 2011).

[119] Am. Compl. ¶ 121.

[120] *Kavanaugh*, 775 F.Supp.2d at 1369-70

[121] Mooney Dep. 12:8-22.

Islamic texts was made by Plaintiff's direct supervisor, Mr. Duncan, only because the Plaintiff had been absent from work for months.[122] Accordingly, Plaintiff cannot establish but-for causation as required by *Nassar*, and the claim fails under that prong as well.

Had the Plaintiff been able to make out a *prima facie* case, the Defendant employer has proffered a legitimate reason for the decision to bring the Plaintiff to speak with Superintendent Mooney and provide a detailed statement. The record reveals that the Superintendent was concerned that one of his employees was engaged in a dispute with a co-worker and desired to learn more about the situation in an effort to foster de-escalation and informal resolution.[123]

This would place the burden back on the plaintiff to then discredit the employer's proffered reason as pretext. This is an admittedly difficult burden for a plaintiff to meet.[124] To do so, a plaintiff cannot simply show that the decision made was wrong or mistaken.[125] Instead, the plaintiff must show such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

---

[122] Duncan Dep. 49-50.

[123] Mooney Dep. 12:8-22.

[124] *Fuentes v. Perskie*, 32 F.3d 759, at 765 (3d Cir. 1994).

[125] *Fuentes*, 32 F.3d at 765.

proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence."[126]

The Plaintiff does not offer evidence sufficient to prove pretext. Under prevailing Third Circuit case law, the Plaintiff must either "offer evidence that casts sufficient doubt upon each of the legitimate reasons proffered by the Defendant so that a factfinder could reasonably conclude that each reason was a fabrication" or "present evidence sufficient to support an inference that 'discrimination was more likely than not a motivating or determinative cause of the adverse employment action."[127]

The Plaintiff does not provide evidence either that the proffered reasons were a fabrication or that discrimination was more likely than not a determinative or motivating cause of the action taken. In fact, nothing the Plaintiff provides rebuts the legitimate nondiscriminatory reasons given by the Defendants. The Plaintiff must "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision."[128] The Plaintiff has further failed to provide any evidence supporting the idea that the proffered reasons were pretextual.

As such, the motion for summary judgment is granted as to Count V.

---

[126] *Id.*

[127] *Shahin v. Delaware*, 563 Fed.Appx. 196, 199 (3d. Cir 2014) (quoting *Fuentes*, 32 F.3d at 762 (3d Cir. 1994)).

[128] *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005).

**F.  Summary Judgment Is Granted As To Count VI—Plaintiff's PHRA Hostile Workplace Environment Claim.**

The Third Circuit has held that the Pennsylvania Human Rights Act (PHRA), 43 P.S. 951 *et seq.*, "is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently.[129] Neither party argues that PHRA departs from federal statute in any way that requires different treatment, so I treat the provisions as applying "identically in this case and as being governed by the same set of decisional law."[130]

Accordingly, my judgment as to the PHRA hostile workplace environment claim is identical to that arrived at under Title VII. The motion for summary judgment is therefore granted on Count VI.

**G.  Summary Judgment Is Granted As To Count VII—Plaintiff's PHRA Retaliation Claim.**

Similar to Count VI, because the PHRA is subject to the same legal analysis, my judgment on this count is identical to that on Plaintiff's Title VII retaliation claim. Therefore, summary judgment is granted on Count VII.

---

[129]  *Fogelman v. Mercy Hosp. Inc.*, 283 F.3d 561, at 567 (3d Cir. 2002).

[130]  *Slagle v. County of Clarion*, 435 F.3d 262, n. 5 (3d Cir. 2006).

**H.    Summary Judgment is Granted As to Count VII—Plaintiff's State Law Battery Claim.**

Plaintiff next alleges that he was subject to a number of intentional torts as a result of the actions of the various Defendants. The first of those is a claim for battery. Battery requires a plaintiff to prove that the defendant "acted with the intent to cause harmful or offensive bodily contact with the person of the plaintiff and that such contact actually followed."[131] The Plaintiff has put forth no evidence to support the claim that any offensive contact occurred, aside from his own subjective evaluations. The Defendants deny that they subjected the Plaintiff to any objectively offensive or harmful conduct. I agree.

Mr. Abuomar provides very little information as to the manner and force of the alleged battery. The record does not reflect sufficient context as to how the Plaintiff was allegedly grabbed, and therefore does not offer enough evidence to create a genuine issue of fact. Multiple witnesses testified that the Plaintiff was never touched by any of the Defendants on the day in question—let alone in an objectively offensive way. For example, Mr. Duncan was clear that no such contact occurred at any point during the day's events, and that he would not have allowed any such contact had it been initiated by the Defendants.[132] Considering the record

---

[131]    *Dull v. West Manchester Tp. Police Dept.*, 604 F.Supp.2d 739, at 754 (M.D. Pa. 2009).

[132]    Duncan Dep. 43:14-23

as whole, the Plaintiff cannot survive motion for summary judgment on the whim of self-serving statements alone.

Defendants further assert that they are entitled to immunity on the battery claim even if the Plaintiff could survive summary judgment on the merits. Pennsylvania's broad immunity statute provides sweeping protections to the Commonwealth of Pennsylvania, its officials, and its employees:

> "Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity…"[133]

The Pennsylvania Department of Corrections (DOC) and its employees fall under the umbrella of protection afforded by Pennsylvania's tort immunity statute. Courts have recognized that the DOC and its employees are entitled to immunity under most circumstances, with the exception of when the General Assembly has specifically waived immunity.[134]

Pennsylvania has waived immunity in a very limited set of circumstances. Acts which may impose liability include cases involving: vehicle liability; medical-professional liability; care, custody or control of personal property; Commonwealth real estate, highways and sidewalks; potholes and other dangerous

---

[133]  1 Pa.C.S. § 2310.

[134]  *Dennison v. Pennsylvania Dept. of Corrections*, 268 F.Supp.2d 387, 405-6 (M.D. Pa. 2003).

conditions; care, custody or control of animals; liquor store sales; National Guard activities; and toxoids and vaccines.[135] Beyond those specific acts by a Commonwealth party, the defense of sovereign immunity applies without question to the Commonwealth, its officials, and its employees performed within the scope of their employment.

In Pennsylvania, courts have adopted the Restatement (Second) of Agency's test for determining scope of employment. Conduct is within the scope of employment only if: (a) it is the kind that the employee is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is calculated, at least in part, by a purpose to serve the employer; and (d) if force is intentionally used, it is not unexpected by the employer.[136] Even intentional torts cannot be recovered for when an employee is acting within his official capacity.[137] Therefore, if the Defendants were acting within the scope of their employment, they are entitled to immunity for the state law claims against them.

It is that scope-of-employment condition that the Plaintiff contends the Defendants do not satisfy. The Plaintiff points to statements made by the director of the EEOC, suggesting that the EEOC has jurisdiction over investigation of

---

[135] 42 Pa.C.S. § 8522.

[136] Restatement (Second) of Agency, § 228 (1958).

[137] *Pickering v. Sacavage*, 642 A.2d 555 (Pa. Commw. Ct. 1994).

complaints made to the EEOC.[138] The Court acknowledges as much. However, it does not simultaneously preclude the Superintendent himself from managing his department's own internal affairs.

Of course, the Court recognizes that the Superintendent, in order to effectively operate his facility and manage his staff, must also have some method of internally investigating allegations that are made amongst employees under his jurisdiction, even if parallel concurrent investigations are already underway. It would lead to counterintuitive results to say that a supervisor could not attempt to internally resolve conflicts between his inferiors in such a manner. In fact, in *Torres v. Pisano*, the Second Circuit reinforced the idea that once an employer is informed of possible harassment in the workplace, he comes under a "duty to take reasonable steps to eliminate it."[139] Upon weighing those concerns, this Court finds that it would be counterproductive to second-guess the authority of the Superintendent by holding that internal investigations were beyond the scope of his duties.

There is no question that the events occurred within the authorized time and space limits, and the decision to have the Plaintiff write a statement was calculated to serve the Department of Corrections. Lastly, it does not appear that any force

---

[138]  Affidavit of Raphael Chieke, ECF 36.

[139]  *Torres v. Pisano*, 116 F.3d 625 (2d Cir. 1997) (citing *Snell v. Suffolk County*, 782 F.3d 1094, 1104 (2d Cir. 1986)).

used (if there was any at all) was unexpected by the employer. As such, the Court finds that the employees were acting within the scope of their employment.

Even if the contact that the Plaintiff alleged did occur, it would not rise to the level of battery. Not every contact between individuals constitutes a harmful or offensive touch. Professors Prosser and Keeton have explained that in "a crowded world," some level of contact between individuals is to be expected.[140] According to the "crowded world doctrine," the time, place, and circumstances surrounding the act are important in determining whether a battery occurred.[141] This doctrine has been applied even in cases where one individual has intentionally made contact with another to find that there was no battery.[142] When trying to move from one end of a prison hallway to another, individuals might well expect some contact from others. In this setting, the alleged contact that the Plaintiff complains of did not rise to a harmful or offensive level.

Accordingly, the motion on summary judgment as to Count VIII is granted.

## I.  Summary Judgment Is Granted As To Count IX—Plaintiff's State Law Intentional Infliction Of Emotional Distress Claim

In order to advance a claim of intentional infliction of emotional distress, a plaintiff has to satisfy four elements, namely that: 1) the conduct was extreme and

---

[140] W. Page Keeton et al., PROSSER AND KEETON ON THE LAW OF TORTS, § 9, at 42 (5th ed. 1984).

[141] *Id.*

[142] *Wallace v. Rosen*, 765 N.E.2d 192 (Ind. Ct. App. 2002).

outrageous; 2) the conduct was performed intentionally or recklessly; 3) the conduct caused emotional distress; and 4) the distress was severe.[143] Conduct is only considered extreme and outrageous in Pennsylvania when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."[144] An average member of the community must hear the facts of the case and be so incensed that he would deem the events "Outrageous!"[145]

The bar for recovery on a claim of intentional infliction of emotional distress is set high for a plaintiff:

> Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have had presented only the most egregious conduct. *See e.g., Papieves v. Lawrence,* 437 Pa. 373, 263 A.2d 118 (1970) (defendant, after striking and killing plaintiff's son with automobile, and after failing to notify authorities or seek medical assistance, buried body in a field where discovered two months later and returned to parents (recognizing but not adopting section 46)); *Banyas v. Lower Bucks Hospital,* 293 Pa. Super. 122, 437 A.2d 1236 (1981) (defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265 (3d. Cir.1979) (defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false).[146]

---

[143] *Doe v. Liberatore*, 478 F.Supp.2d 742, at 765 (M.D. Pa. 2007).

[144] *Strickland v. University of Scranton*, 700 A.2d 979, at 987 (Pa. Super. Ct. 1997).

[145] *Id.*

[146] *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998).

Additionally, the plaintiff must allege the "physical manifestations of that distress," showing a physical harm suffered as a result of the outrageous conduct.[147] Furthermore, a plaintiff must generally provide "competent medical evidence" to prove injury.[148]

The Plaintiff has not provided evidence to show that the alleged conduct was of an extreme and outrageous nature necessary to satisfy the first prong. Nor has he supplemented the record with sufficient medical evidence, or any competent medical evidence, to satisfy his burden as to the third or fourth prongs. This complete absence of evidence supporting his claim for intentional infliction of emotional distress means that it must fail on the merits.

Furthermore, in accordance with the rationale and judgment outlined with regard to Count VIII, Defendants are entitled to summary judgment on the state law claim alleged under Count IX for intentional infliction of emotional distress on the basis of state sovereign immunity. Therefore, summary judgment with respect to Count IX is granted.

---

[147] *M.S. ex rel. Hall v. Susquehanna Township School Dist.*, 43 F.Supp.3d 412, 430 (M.D. Pa. 2014).

[148] *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, at 197 (Pa. 1987).

### J. Summary Judgment Is Granted As To Count X—Plaintiff's State Law False Imprisonment Claim

False imprisonment in Pennsylvania is characterized by two elements: first, the detention of a person, and second, the unlawfulness of such detention.[149] The Plaintiff must therefore prove that he was in fact detained, and that this detention would have been unlawful. The Plaintiff fails to make out this claim because he was simply not detained on the day in question, for the reasons outlined under Count II. Absent evidence of such detention, the Plaintiff's claim for false imprisonment fails.

Even if the Plaintiff had provided sufficient evidence to survive summary judgment on the merits of the claim, Defendants are entitled to immunity in accordance with the rationale and judgment outlined with regards to Count VIII. As a result, the motion for summary judgment is granted on Count X.

---

[149] *Pahle v. Colebrookdale Tp.*, 227 F.Supp.2d 361 (E.D. Pa. 2002) (citing *Fagan v. Puttsburg Terminal Coal Corporation*, 149 A. 159 (Pa. 1930)).

## IV.  CONCLUSION

In accordance with the foregoing reasoning, Defendants' Motion for

Summary Judgment is granted in full.

An appropriate Order follows.


BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge